IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GUILLERMO CHAVEZ,

    Plaintiff,                    No. 2:11-cv-1015 WBS CKD P

    vs.

GRANAZOZ,                          ORDER and

    Defendant.              FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff Chavez, an inmate of the California Department of Corrections and Rehabilitation ("CDCR"), proceeds pro se with a verified civil rights complaint filed pursuant to 42 U.S.C. § 1983. (Dkt. No. 1.) Plaintiff asserts claims under the First and Eighth Amendments against defendant Granadoz, the sole defendant. Defendant has moved to dismiss the complaint on the ground that plaintiff failed to exhaust administrative remedies before filing suit. (Dkt. No. 18.) Plaintiff opposes the motion (Dkt. Nos. 21) and defendant has filed a reply (Dkt. No. 22).

I. Allegations of the Complaint

        The events giving rise to this lawsuit occurred at California State Prison- Solano (CSP-Solano), where plaintiff was incarcerated and defendant was employed at all times relevant. According to the complaint, during January or February of 2010, defendant searched the cell of another inmate, to whom plaintiff had loaned his radio. (Id. at 10.) Defendant

indicated to plaintiff that defendant was going to confiscate the radio. (Id.) Plaintiff responded that plaintiff was going to file a staff complaint and defendant stated "Oh I can play that game better than you," which plaintiff took to be a threat to retaliate if plaintiff filed a grievance. (Id.)

On February 14, 2010, plaintiff was standing at his cell door when he saw defendant engage in a short conversation with inmate Barrera and then return to the officer's podium. (Id. at 5-6.) Approximately 15 minutes later, an unnamed officer, Doe 1, opened plaintiff's cell door for early worker's chow release. (Id. at 6.) As plaintiff proceeded down the stairs, Doe 1 released the cell door of inmate Barrera, who ran past defendant, up to plaintiff, and began stabbing plaintiff in the left eye with a metal weapon and kicking plaintiff with his feet. (Id.) Defendant did not make any attempt to stop the assault and did not activate the security alarm for approximately 5-10 seconds. (Id.) Plaintiff sustained injuries including stab wounds to his left eye, cuts on his head, bruises, and abrasions. (Id. at 7.)

Plaintiff was transported to the emergency room at UC Davis Medical Center where surgery was performed on his left eye. (Id. at 3, 8.) On February 19, 2010, he was discharged from the hospital and placed in the Administrative Segregation Unit (ASU) at CSP-Solano. (Id. at 3, 8-9.) Once there, Doe 1 approached plaintiff and stated "...Oh Mr. Chavez, I'm so sorry about what happened. I'm not the regular and I told [defendant] that inmate Barrera was not on the release roster but he insisted and opened the door[.]" (Id. at 9.) Plaintiff alleges that defendant knew that Barerra was not supposed to be released at the time of the assault, and that the assault resulted from defendant's desire to retaliate against him "for exercising his right to complain[ ] of reprisals for [defendant] keeping his radio." (Id. at 9-10.)

Plaintiff's inmate appeal (CDCR-602) regarding the events of February 14, 2010 was due March 5, 2010, however he was not able to timely file it due to being in excruciating pain and suffering from mental stress from the assault. (Id. at 3.) Plaintiff requested unnamed staff to assist him in preparing his inmate appeal pursuant to CCR 3084.1(b), however, staff refused. (Id. at 3-4.) On March 23, 2010, plaintiff was transported back to UC Davis for a

follow-up appointment and on March 24, 2010 another surgery was performed during which his left eye was removed and an implant inserted. (Id. at 4, 12.) Subsequently he was transported back to ASU at CSP-Solano on March 24, 2010. (Id.)

Plaintiff commenced this federal action on April 15, 2011. (Dkt. No. 1.) For screening purposes, it was determined that plaintiff stated cognizable claims that Granadoz violated his rights under the First and Eighth Amendments. (See Dkt. No. 10 at 3.)

II. Exhaustion of Administrative Remedies

A. Legal Standard

Pursuant to the Prison Litigation Reform Act ("PLRA"):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Compliance with the exhaustion requirement is mandatory. Booth v. Churner, 532 U.S. 731, 739, 741 (2001) (holding that prisoners must exhaust their administrative remedies regardless of the relief they seek, i.e., whether injunctive relief or money damages, even though the latter is unavailable pursuant to the administrative grievance process).

The State of California's prison regulations provide administrative procedures in the form of one informal and three formal levels of review to address plaintiff's claims. See 15 Cal. Code Regs. §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a prisoner has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5. All steps must be completed before a civil rights action is filed, unless there is an exception; exhaustion during the pendency of the litigation will not save an action from dismissal. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002). In order to properly exhaust in compliance with the exhaustion requirement of section 1997e(a), a prisoner must comply with applicable procedural rules and time requirements. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

      "The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures."  Jones v. Bock, 549 U.S. 199, 218 (2007); see also  McCollum v. CDCR, 647 F.3d 870, 876 (2011) ("Whether an inmate's claim has been exhausted is determined by reference to the prison's own grievance requirements, which necessitate that the inmate "describe the problem and the action requested." (internal quotations and citations omitted)).  In California,

> A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.

Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); see also McCollum, 647 F.3d at 876 ("While an inmate need not articulate a precise legal theory, a grievance must alert the prison to the nature of the wrong for which redress is sought."); see also Jones, 549 U.S. at 219 ("[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

      The exhaustion requirement is not jurisdictional, but rather is an affirmative defense that may be raised by a defendant in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b).  See Jones v. Bock, 549 U.S. 199, 216 (2007) ("inmates are not required to specially plead or demonstrate exhaustion in their complaints"); Wyatt v. Terhune, 315 F.3d 1108, 1117–19 (9th Cir. 2003) (failure to exhaust is an affirmative defense).  The defendant bears the burden of raising and proving the absence of exhaustion.  Id. at 1119.  If the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice."  Wyatt, 315 F.3d at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005) ("mixed" complaints may proceed on exhausted claims).

/////

4

1       "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119. "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust – a procedure closely analogous to summary judgment – then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record." Id. at 1120 n.14. In this case, plaintiff was advised of the requirements to oppose an unenumerated Rule 12(b) motion to dismiss by orders of the court on February 17, 2012 and July 12, 2012. (Dkt. Nos. 14, 19.)

    B. <u>Discussion</u>

      Defendant contends plaintiff failed to properly exhaust administrative remedies before filing suit. As set forth, plaintiff filed his inmate appeal (CDCR 602) late, on April 4, 2010. (Id. at 4.) Although he attempted to explain therein why it was submitted late, the CSP-Solano Appeals coordinator rejected it as untimely. (Id. at 4.)

      Subsequently, however, plaintiff's untimely appeal dated April 4, 2010 was accepted for further review. (Dkt. No. 18-1 at 3 & Ex. A.) According to the sworn declaration of S. Cervantes, Appeals Coordinator at CSP-Solano, plaintiff's April 4, 2010 appeal was accepted for further review on June 14, 2010, however, at that time plaintiff was requested to provide more information about whether he was filing a staff complaint. (Id.) Specifically the response provided to plaintiff was as follows:

> Your CDC 602 dated 4/4/10 has been accepted for further review. However, clarification is needed. If you are filing a staff complaint, you must provide specific name of staff involved in the 2/14/10 incident on first watch, in Building Twelve. If you are not filing a staff complaint, please indicate that attached CDC 602 is not filed as a staff complaint issue.

(Dkt. No. 18-1 at Ex. A.) Plaintiff did not respond to this request for additional information and his appeal was screened out. (Dkt. No. 18-1 at 3.)

/////

5

In addition, according to the sworn declaration of J.D. Lozano, Chief of the Office of Appeals (OAA), no appeals have been accepted from plaintiff at the Director's Level of review, which is the final level of available review. (Dkt. No. 18-2 at 3.) Plaintiff's Appellate Appeal History maintained by the OAA indicates that only two appeals have been submitted by plaintiff, one regarding a disciplinary issue in 2010 and one regarding a medical issue in 2001; both were screened out. (Dkt. No. 18-2 at Ex. A.)

In sum, therefore, defendant asserts that because plaintiff failed to respond to the request for clarification from the CSP-Appeals coordinator and also failed to submit the issue to the third and final level of review, he deprived the prison of the opportunity to review and remedy the issues grieved, which constitutes a failure to properly exhaust administrative remedies. (Dkt. No. 18 at 5.)

In his opposition to the motion to dismiss, plaintiff argues, in relevant part, that the CSP-Solano Appeals Coordinator improperly screened out his appeal for failing to respond to the request for clarification regarding whether he was submitting a staff complaint. He asserts:

> [T]he appeal rejection in June, 2010, was based upon the fact that Plaintiff did not name the person he was attempting to submit the appeal upon. However, [t]he prison grievance system in California does not require a prisoner to expressly name the defendants in the grievance in order to exhaust administrative remedies under the PLRA.

(Dkt. No. 21 at 8-9.) And further:

> Because Plaintiff could not have completed the appeals process without first going through the SOL Institutional Level Review, Defendant must be estopped from relying on a condition to filing an appeal that Plaintiff was prevented from attempting to exhaust.

(Dkt. No. 21 at 6-7 (internal citations and footnote omitted).)

As stated, "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." Jones, 549 U.S. at 219. In so holding, the Supreme Court noted that the Michigan corrections department did not contain a provision specifying who

6

must be named in a grievance, and that rather, "[t]he grievance policy specifically provides that the grievant at Step I "shall have the opportunity to explain the grievance more completely at an interview, enabling the Step I respondent to gather any additional information needed to respond to the grievance." Jones, 549 U.S. at 218.  Thus, "[n]othing in the MDOC policy itself support[ed] the conclusion that the grievance process was improperly invoked simply because an individual later named as a defendant was not named at the first step of the grievance process." Id.

Similarly here, plaintiff did not name defendant at the first step of the grievance process.  In contrast to the situation in Jones, however, plaintiff was notified that clarification was needed and that he needed to provide the name of the staff involved if he was filing a staff complaint.  This was in accord with CDCR's grievance procedures which specifically provide that the appealing inmate "shall list all staff member(s) involved and shall describe their involvement in the issue." 15 Cal. Code Regs. § 3084.2(a)(3).  "If the inmate... does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." 15 Cal. Code Regs. § 3084.2(a)(4).  Plaintiff does not dispute that he made no response to the Appeals Coordinator's request for the name of the staff member involved.  Instead, he argues that the Appeals Coordinator improperly screened out his appeal "on a technicality that he could not have possibly complied with." (Dkt. No. 21 at 6.) Plaintiff does not explain why he could not have complied with the request for more information. If he did not know defendant's name at that time, he could have responded stating such and providing as much information as he had, pursuant to departmental rules.  Plaintiff explains at length that he was prevented from timely filing his grievance during period of February 19, 2010 to March 23, 2010 due to pain, mental stress, and lack of staff assistance; however, his untimely grievance was nevertheless accepted and it was not until June 14, 2010 that he was asked to provide more information about whether he was filing a staff complaint and if so, the identity of

7

the staff. Plaintiff was released from administrative segregation at CSP-Solano on April 30, 2010 (Dkt. No. 1 at 16) and, at some point, was transferred to Folsom State Prison ("FSP") (Dkt. No. 21 at 6). Plaintiff makes no attempt to explain how he was allegedly prevented from complying with CDCR's rule to name or attempt to identify the staff member involved in his staff complaint after specifically being requested to do so, and he submits no evidence on this point.[1] In addition, it is undisputed that plaintiff made no submission regarding defendant's alleged conduct to the Director's level, which is the third and final level of review.

As set forth, "[t]he level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures." Jones, 549 U.S. at 218; see also McCollum, 647 F.3d at 876. Here, the screening out of plaintiff's appeal for failure to name the staff involved in a staff complaint was in accord with CDCR's grievance procedures. When plaintiff failed to respond to the request for additional information by the Appeals Coordinator and further failed to submit the issue to the final level of review, he deprived CDCR of the opportunity to review and respond to his grievance concerning defendant's conduct. Under these circumstances, defendant has met his burden of raising and proving the absence of exhaustion. Both of plaintiff's claims should be dismissed without prejudice. See Wyatt, 315 F.3d at 1120.

In accordance with the above, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for protective order from discovery requests (Dkt. No. 20) is DENIED as moot.

/////

/////

---

[1] Plaintiff states in his opposition: "After Plaintiff was moved to FSP, when he completed Orientation and was able to get his personal property, he again attempted to exhaust his administrative remedies with SOL appeals staff on June 14, 2010." (Dkt. No. 21 at 6.) He does not address, however, why he failed to respond to the request for additional information on the staff complaint re-submitted on June 14, 2010.

Further, IT IS HEREBY RECOMMENDED THAT:

1. Defendant's motion to dismiss (Dkt. No. 18) be GRANTED;
2. Plaintiff's claims brought under the First and Eighth Amendment be dismissed without prejudice; and
3. The clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 7, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8
chav1015.mtd