UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO CHAVEZ,<br><br>           Plaintiff,<br><br>      v.<br><br>GRANADOZ, et al.,<br><br>           Defendants. | No.  2:11-cv-1015 WBS CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. This action is proceeding on plaintiff's first amended complaint filed September 27, 2013. The claims which remain arise under the First and Eighth Amendments against defendants Granadoz and Barnett (defendants). Defendants have filed a motion for summary judgment.[1]

I. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by

---

[1] The court notes that several months after defendants filed their motion for summary judgment, plaintiff filed a motion asking that the transcript of his deposition be "suppressed." ECF No. 80. The court need not address this motion herein as there is no testimony appearing in the transcript which affects the outcome of the following findings and recommendations.

1

"citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

II. Plaintiff's Claims

In his first amended complaint, which is signed under the penalty of perjury, plaintiff alleges as follows:

1. On February 14, 2010, plaintiff was an inmate at California State Prison, Solano (CSPS) and defendants worked there as correctional officers.

2. At approximately 6:15 a.m. that morning, as plaintiff was awaiting release from his cell for breakfast, he observed defendant Granadoz, who was in charge of the cell block that morning, speaking with inmate Entique Barrera. Inmate Barrera was in his cell and Granadoz was outside the cell. Before plaintiff was released, Granadoz walked over to the correctional officer's podium in the cellblock where defendant Barnett was located and in charge of the control booth.

3. After plaintiff was released from his cell by defendant Barnett and as plaintiff was walking from his cell to the mess hall, defendant Barnett opened the door to the cell occupied by inmate Barrera. Inmate Barrera was not authorized for release at that point in the day.

4. Inmate Barrera exited his cell, ran by defendants at the correctional officer's podium, ran down plaintiff, repeatedly stabbed plaintiff in his left eye with a sharp piece of metal, and hit plaintiff on his head with his other hand. Plaintiff, caught off guard, offered no resistance to the

1  attack. Neither defendant warned plaintiff that Barrera was about to attack him as Barrera ran by
2  them.
3      5. Five to ten seconds into the attack, defendant Granadoz arrived at the scene. Despite
4  the fact that plaintiff was not fighting back, Granadoz pepper-sprayed both plaintiff and Barrera
5  on their faces.
6      6. As a result of his injuries, plaintiff was taken to U.C. Davis Medical Center. He
7  suffered severe injuries to his head and face including the loss of sight in his left eye.
8      7. On February 19, 2010, after plaintiff had arrived back at CSPS from the U.C. Davis
9  Medical Center, Defendant Barnett approached plaintiff and said:

> Oh, Mr. Chavez, I'm so sorry about what happened. I am not the regular and I told Officer [defendant] Granadoz that inmate Barrera was not on the release roster, but he insisted that I open the door [to Barrera's cell].

ECF No. 47 at 11.

    6. Plaintiff alleges that before the attack, the following occurred between defendant Granadoz and plaintiff:

> That during the months of January and February 2010, defendant ... Granadoz searched another inmate's cell whom the Plaintiff had allowed to borrow his AM/FM/CD Cassette Radio, "AIWA" brand. Defendant Granadoz said he was going to confiscate the radio. Plaintiff upon learning what had taken place with defendant Granadoz Plaintiff spoke with defendant Granadoz in an attempt to resolve the mis-understanding. However, upon Plaintiff's speaking with Defendant Granadoz about returning his AIWA radio, defendant Granadoz responded, "I am not sure whether I should give you the radio because those inmates have fucked up . . ." Plaintiff pointed out to defendant Granadoz that pursuant to California Code of Regulations title 15 § 3191(b), the correctional officer was required to either write up the Plaintiff (issuing him a Rules Violation Report), or return the property to plaintiff. That if Defendant Granadoz refused to the follow the regulations found in title 15, the Plaintiff would file a staff misconduct complaint against defendant Granadoz. To that, defendant Granadoz responded, "Oh, I can play that game better than you." Plaintiff accepted defendant Granadoz's statement of a threat of future retaliation to be taken against the Plaintiff should a grievance be filed.

ECF No. 47 at 6.

/////

4

III. Arguments and Analysis

    A. First Amendment

In the "first cause of action" in his amended complaint, plaintiff alleges that defendants caused plaintiff to be attacked by inmate Barrera in retaliation for plaintiff's assertion that he would file a prisoner grievance against defendant Granadoz if Granadoz did not follow proper prison procedure with respect to the confiscation of plaintiff's radio. ECF No. 47 at 18-19. Prison officials generally cannot retaliate against inmates for the exercise of First Amendment rights, such as the use of an inmate grievance process. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012). The Ninth Circuit has held that threatening activity protected under the First Amendment is also protected. Gifford v. Atchison, Topeka and Santa Fe, 685 F.2d 1149, 1156 n. 3 (9th Cir. 1982).

The court agrees with defendants that the key question in determining whether defendants are entitled to summary judgment with respect to plaintiff's remaining First Amendment retaliation claim is whether, based upon the evidence before the court, a reasonable jury could find that Barrera's cell door was opened on February 14, 2010 in retaliation for plaintiff's threat regarding the filing of a grievance.

The court assumes, as it must, all of the facts alleged by plaintiff are true. Other facts which either are not disputed or admitted by plaintiff are: 1) Granadoz returned plaintiff's radio to him about a month before plaintiff was attacked (ECF No. 79 at 15); and 2) plaintiff never actually filed a grievance against defendant Granadoz with respect to the incident concerning plaintiff's radio (id.).

After reviewing all of the evidence before the court and the arguments of the parties, the court finds that defendants are entitled to summary judgment with respect to plaintiff's First Amendment claim. There is simply no evidence which suggests that either Granadoz or Barnett or both of them caused inmate Barrera's cell door to be opened so that he would attack plaintiff in retaliation for plaintiff's threat regarding the filing of a prisoner grievance against defendant Granadoz. At best, Granadoz's statement "Oh, I can play that game better than you" could be interpreted as a threat of some sort of abuse of power were plaintiff to file a grievance. However,

5

the statement could also be interpreted as being completely benign and simply an admonition to plaintiff that Granadoz understands how the grievance process works and an expression of confidence in the outcome.  In any case, it is unreasonable to find that the statement is evidence of a motive by Granadoz or Barnett to have plaintiff murdered.

Furthermore, the fact that plaintiff's radio was returned to plaintiff, and the fact that approximately one month elapsed between the alleged confrontation between plaintiff and Granadoz and plaintiff's being attacked, suggest that the confrontation and the attack are not connected.  Finally, there is no evidence indicating that Granadoz or Barnett had any reason to believe that inmate Barrera meant plaintiff harm when Barnett released Barrera from his cell, or that defendants and Barrera conspired to cause plaintiff harm. [2]

For these reasons, defendants' motion for summary judgment with respect to plaintiff's remaining First Amendment claims should be granted.

B.  Eighth Amendment

In his "second cause of action" plaintiff asserts defendants violated his right to be free from cruel and unusual punishment when defendant Granadoz used pepper spray against plaintiff.[3]  Essentially, plaintiff claims defendants used excessive force against plaintiff.  When a prisoner alleges that prison staff have violated the Eighth Amendment by using excessive force, the core judicial inquiry is whether the force was applied "maliciously or sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Plaintiff asserts that while he was being attacked by inmate Barrera, and offering no resistance to the attack, defendant Granadoz fired pepper spray "all over his bleeding face" as well as on the face of inmate Barrera.  ECF No. 47 at 8.  In his declaration, defendant Granadoz admits firing pepper spray at Barrera and emptying his can.  ECF No. 68-5 at 3.  He asserts he

---

[2] In fact, plaintiff does not claim, nor has there been evidence presented, that there were any prior problems between plaintiff and Barrera, nor that the defendants had any prior knowledge of Barrera's intent to harm plaintiff before the attack took place.

[3] Plaintiff makes other allegations against other defendants under the heading "second cause of action."  As indicated above, the only Eighth Amendment claims which remain are claims against defendants Granadoz and Barnett.

1 never fired his spray directly at plaintiff, however "due to the fighting inmates' in close

2 proximity, it is possible that some pepper spray indirectly contacted plaintiff . . ." (id.).

3     Construing the evidence in the light most favorable to plaintiff, defendants' motion for

4 summary judgement should be denied with respect to plaintiff's excessive force claim against

5 defendant Granadoz, as plaintiff asserts defendant Granadoz fired pepper spray directly at his

6 wounded face, even though plaintiff was non-combative and not resisting Granadoz's attempts to

7 stop Barrera's attack upon plaintiff.  Accepting these facts as true, a jury could find the amount of

8 force used against plaintiff by Granadoz was excessive and intended to cause plaintiff harm.

9 With respect to defendant Barnett, plaintiff fails to point to any facts indicating that she ever used

10 any force on plaintiff or that she somehow assisted Granadoz in his use of force.  Accordingly,

11 the court will recommend that defendants' motion for summary judgment with respect to

12 plaintiff's Eighth Amendment claim against defendant Barnett be granted.

13     C.  Qualified Immunity

14     Defendants assert they are immune from plaintiff's remaining claims under the "qualified

15 immunity" doctrine.  Government officials performing discretionary functions generally are

16 shielded from liability for civil damages insofar as their conduct does not violate clearly

17 established statutory or constitutional rights of which a reasonable person would have known.

18 Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

19     As indicated above, there is a failure or proof with respect to plaintiff's First Amendment

20 claims and plaintiff's Eighth Amendment claim against defendant Barnett.  In those instances,

21 defendants are entitled to qualified immunity because there are not facts which can show a

22 violation of Constitutional rights.

23     With respect to plaintiff's remaining Eighth Amendment excessive force claim against

24 defendant Granadoz, plaintiff has a clearly established right arising under the Eighth Amendment

25 not to be subjected to excessive force.  Hudson, 503 U.S. at 7.  There are genuine issues of

26 material fact as to whether Granadoz violated this aspect of the Eighth Amendment specifically

27 addressed in Hudson.

28 /////

In accordance with the above, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 68) be granted in part and denied in part as follows:

1. Granted with respect to plaintiff's remaining claims arising under the First Amendment;

2. Granted with respect to plaintiff's remaining Eighth Amendment claim against defendant Barnett resulting in defendant Barnett's dismissal from this action; and

3. Denied with respect to plaintiff's remaining Eighth Amendment claim against defendant Granadoz.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 8, 2016

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
chav1015.57